## LIABILITY FOR INJURY TO A WAGON BOY IN A COLLISION WITH AN ELECTRIC CAR.

### Common Pleas Court of Hamilton County.

JOHN WYNNE, GUARDIAN OF JAMES RUSSELL WYNNE, AN INFANT, v. THE CINCINNATI TRACTION COMPANY AND THE ADAMS EXPRESS COMPANY.*

### Decided, March 7, 1914.

*Negligence—Question of Joint Enterprise as Between a Driver and His Wagon Boy—Whether They Were Fellow-Servants Was a Proper Question for the Jury Under the Testimony and Proper Instructions by the Court—Excessive Verdict.*

In a collision between a wagon belonging to an express company and loaded with express packages and an electric car, the wagon boy, aged fourteen, whose duty it was to stand on the tail gate of the wagon and watch the load and help the driver to unload when called upon so to do, was thrown under the car and lost a leg. *Held:*

1. The driver of the wagon and the boy were not engaged in a joint enterprise of a character which would permit the negligence of the driver, or the combined negligence of the driver and the motorman of the car, to be imputed to the boy.

2. Whether the driver and the boy were fellow-servants, or the position of the boy was subordinate to that of the driver, was a question for determination by the jury under proper instructions by the court.

3. A verdict of $15,000 in favor of a boy for the loss of a leg is unusually large, and in view of the fact that the jury were probably induced to increase their award by testimony as to the likelihood of the boy being compelled to undergo a second amputation of the injured limb, the court grants a remittitur of $5,000.

*Paxton, Warrington & Seasongood, Robert S. Marx, Robertson & Buchwalter* and *Theo. C. Jung,* for the motion.

*Littleford, James, Ballard & Frost,* contra.

NIPPERT, J.

Decision on motion for a new trial.

*Affirmed, except as to the amount of damages to be allowed, *Cincinnati Traction Co.* v. *Wynne,* 25 C.C.(N.S.), —.

The facts in this case are about as follows:

On the evening of November 7, 1911, James Russell Wynne, a minor aged fourteen years, and while in the employ as "wagon boy" of the Adams Express Company, one of the defendants in this action, was standing on the tail gate of one of the express company's wagons, which was being driven westwardly on Ninth street, loaded with packages to be delivered at the L. & N. freight depot, and while this wagon was crossing the intersection of Ninth and Freeman avenues the said wagon was struck by a car of the defendant, the Cincinnati Traction Company, causing the said minor to be thrown under the wheels of the street car, crushing his left leg so that it had to be amputated about three inches below the knee.

The minor, through his father, John Wynne, as guardian, brought suit against the Cincinnati Traction Company, as well as against the Adams Express Company, charging negligence against both companies, and recovered a verdict of $15,000 against both of the defendants. This verdict is now sought to be set aside upon motion of both companies.

The Cincinnati Traction Company, while admitting that there was a collision between one of its cars and a wagon belonging to the Adams Express Company at the intersection of Ninth and Freeman avenues, and admitting plaintiff's injuries, denies its own negligence and sets up as its defense to the plaintiff's allegations "that the injuries were caused by his own concurring and contributing negligence and in connection with the concurring and contributing negligence of the driver of said wagon."

The Adams Express Company in its answer admits the employment of the minor as a wagon boy, and "that among his duties as such wagon boy he was at times required to ride on one of the wagons of this defendant," and that on the evening of the accident he was riding on one of the express company's wagons and that a street car of the defendant traction company violently ran into and collided with the wagon of the defendant express company, causing the injuries complained of by plaintiff, and that said injuries were due solely to the carelessness and negligence of the defendant traction company in operating its car at a careless and very rapid rate of speed, and

that the motorman failed to have the car under proper control, failed to sound the gong or in any manner give proper and due warning of the approach of said car towards Ninth street, and that the motorman carelessly and negligently failed to keep a lookout as the said street car approached said street intersection, and that the defendant traction company, in the exercise of ordinary care, could have avoided the collision, which the Adams Express Company in the exercise of ordinary care could not have avoided.

The plaintiff, in reply to the second defense of the Cincinnati Traction Company, denies that the negligence of the minor contributed to or concurred in causing his injuries and further denies any negligence whatsoever.

Both the Cincinnati Traction Company and the Adams Express Company have filed a motion to set aside the verdict and are asking for a new trial.

It appears, however, that the defendant, the Cincinnati Traction Company, seems to rely strongly for its ground for a new trial upon the refusal of the court to give a certain special charge (No. 3) requested by the Cincinnati Traction Company, touching upon the question of joint enterprise, as follows:

"The driver and plaintiff were taking an active part in a joint enterprise, namely, the transportation from one depot to another and intended delivery into a railroad car of the load of freight on the express wagon. This being so, the negligence of the driver, if any, is imputed to the plaintiff, so far as concerns the defendant, the Cincinnati Traction Company, and if the accident to the plaintiff was caused either solely by the negligence of the driver of said wagon or by the combined negligence of the driver and motorman, the plaintiff can not recover against the defendant, the Cincinnati Traction Company."

While this defense of "joint enterprise" has not been specially pleaded and while the court believes that in order to take advantage of this defense it should have been specially pleaded, still, even in that case the court do not agree with counsel for defendant in their contention that the enterprise in which the driver of the express wagon and the enterprise in which the wagon boy of the express company were engaged at

the moment of the accident can be considered of such a nature as to warrant the court to instruct the jury as a matter of law that they were engaged in a joint enterprise, and therefore the special charge requested, as set out above, was properly refused.

The court further believe that there was no evidence of sufficient force to warrant the court to charge the jury that if the jury should find that they were engaged in a joint enterprise that the plaintiff could not recover, for, as stated at the time of the trial, the court did not feel warranted to give the charge on the question of joint enterprise because the respective duties of the driver of the wagon and the wagon boy at the time of the accident were not of such a character as to impute the negligence of the driver of the horses, a man about thirty-six years of age, to a wagon boy, aged fourteen, whose duty it was at that time to stand on the back of the wagon and watch the packages intrusted to his care.

To sustain the contention of the traction company in this respect, counsel urges very strongly the doctrine laid down in *Railroad Company* v. *Kistler*, 66 Ohio State, page 326, where the court say:

"While the doctrine of imputed negligence does not prevail in this state, yet where two or more persons take an active part in a joint enterprise, the negligence of each, while so actively engaged, must be regarded as the negligence of all."

But the facts presented in the Kistler case are entirely different from the facts presented here. In the former, the driver of the wagon and father of the plaintiff being nearly deaf took the daughter along to hear for him, and as they neared the railroad track he told her to look and listen for trains while he was attending the horses. The daughter did her part of the enterprise in a manner so negligent and careless that it resulted in the accident which formed the basis of that suit. The father and the daughter were engaged in a joint enterprise, as the evidence plainly showed, and each in that case would be chargeable with the negligence of the other. But in the case at bar

there was not a scintilla of evidence before the jury which would warrant them to consider whether or not at the moment of the accident the wagon boy and the driver were engaged in a joint enterprise. On the contrary, the testimony of the driver showed that the management of the horses, the driving of the same, their speed, etc., was exclusively within his power and jurisdiction, and that the wagon boy had absolutely nothing to do with the team or the driving of the same; that he was not anywhere near the driver at the time; that at the time of the accident the wagon boy was attending strictly to his duties as laid down by the rules of the Adams Express Company in standing upon the rear end of the wagon "watching the load" and to guard against any packages being lost or stolen. The testimony shows that the load at the time was a fairly heavy one, consisting of a great number of large and small packages. The mere fact that the driver had the right to call upon the wagon boy, upon reaching his destination, to assist him in unloading the wagon, can not be construed so as to warrant the court to instruct the jury upon the question of joint enterprise at the moment of the accident and thus impute the negligence of the driver of the horses to the wagon boy.

The principle in the Kistler case would no doubt apply if there had been any evidence to the effect that the wagon boy, instead of being on the rear of the wagon where his duty called him, was on the seat with the driver, that he assisted the driver, and that he, in conjunction with the driver, was charged with the management of the team and the safe progress of the wagon across the streets of the city. But the evidence conclusively shows that it was the duty of the wagon boy always to be stationed on the rear end of the wagon and to watch the packages in transit, that is, the contents of the wagon, while the duty of the driver was to look after the progress of the wagon and the management of the team through the streets of the city.

Another rule of the express company, introduced in evidence, is Rule No. 10, which reads as follows:

"Drivers must never permit any one else to handle their teams." * * *

The courts of our state have not gone as far in applying the doctrine of imputed negligence as some of our sister states, and as the case at bar and the Kistler case bear little or no resemblance, the court does not feel it committed error in its failure to submit to the jury the question of joint enterprise.

The main ground urged by the defendant, the Adams Express Company, in its motion for a new trial, is the refusal of the court to charge on the question of fellow-servant as follows (special charge No. 6):

"The driver of the wagon on which the plaintiff was riding at the time of the accident, found the plaintiff employed as wagon boy by the Adams Express Company, at the time he was assigned to said wagon as driver.

"The driver had control of the operations of such wagon, and his duties were to drive the team, load and unload the wagon, collect, transfer and deliver express.

"The duties of the plaintiff were to help load or unload the wagon, if necessary, to stand on the rear of the wagon, when loaded, to watch the express on such wagon, and in the absence of the driver to watch the team.

"The driver and the plaintiff were thus taking an active part in a common service of the Adams Express Company, that of the collection, delivery and transfer of express packages, and were thus fellow-servants, and your verdict must be in favor of the Adams Express Company."

In other words, the Adams Express Company requested the court to charge that the driver and the wagon boy being fellow-servants, the boy could not recover on account of the negligence of his fellow-servant, the driver.

The court refused to charge as requested, but did submit the question of whether or not these two employees were fellow-servants, and stated to the jury that—

"Where different persons are employed by the same principal in a common enterprise and no control is given to one over the other, then no action can be sustained by them against their employer on account of any injuries sustained by one employee through the negligence of the other; but when one servant is placed by his employer in a position of subordination and subject to the orders and control or direction of another servant,

and such inferior servant, without fault and while in the discharge of his duties, is injured through negligence of the superior servant, then in that case the master is liable.''

And the jury were instructed to consider these principles of law in connection with the testimony of the driver, the wagon boy, and the rules of the company as far as they were admitted in evidence, and if they found that the driver had neither the power nor the authority to direct or control the actions or conduct of the boy, then the wagon boy and the driver would be considered fellow-servants, and the plaintiff could not recover; but if they should find from the evidence that the defendant express company had placed the wagon boy in a position of subordination to the driver and that he was injured without fault of his own, through the negligence of the superior servant * * * then the defendant express company would be liable for any injuries thus caused.

This placed the question of whatever relationship the plaintiff may have sustained to the driver of the wagon squarely before the jury and to have done otherwise would have been, in the opinion of the court, serious error.

We believe that the special charges requested by the Adams Express Company, and refused by the court, were properly refused, and the motion for a new trial based upon these grounds is therefore overruled.

Counsel for defendants insist that the court erred in a number of instances in the general charge.

The court has given considerable thought to this complaint. It may be well for counsel to realize that this was a case which brought into discussion an unusual number of technical questions of law—the jointure of the two companies as parties defendant, the relationship of the minor plaintiff to the other employee of the express company, the nature of the enterprise in which each of them was engaged at the time, the relative rights of the traction company and the Adams Express Company as users of a public thoroughfare, the negligence of the motorman, the imputed negligence of the driver and the contributory negligence of the plaintiff. As to the latter, it may

be stated at this point that there was not sufficient evidence to warrant the court to submit to the jury the question of the plaintiff's contributory negligence, though the court did include such an instruction as a part of the charge, even though at this time the court can not find anything in the record that would warrant such an instruction. So, the defendants have no complaint to make in this respect.

As to the other exceptions to the general charge, taken by the defendants, the court has attempted to follow as nearly as possible the rules of law laid down in the recent decision of our Supreme Court in *Steubenville & Wheeling Traction Company v. Brandon,* 87 Ohio State, 187.

Another ground urged by defendant's counsel in support of the motion for a new trial is the alleged misconduct of counsel for plaintiff.

While the court recognizes that plaintiff's counsel, in the heat of the trial of this case, did propound a question to one of the defendant's witnesses which, in the opinion of the court, was not proper, yet it was not of such a nature as to warrant the court to do anything further than to reprimand counsel and to instruct the jury to disregard the question propounded to the witness.

The court recognizes the right of counsel to conduct cross-examination of the witness in his own way as long as counsel observes the rules of evidence and the ethics of his profession. The mere fact that a question is improper and objected to by opposing counsel before the witness has answered, and the court has ruled on same and has instructed the jury to disregard the question, will not be sufficient to warrant the court to set aside a verdict, and the motion of the defendants in asking for a new trial on that ground is therefore overruled.

In the controversy which subsequently arose between counsel in the presence of the jury, one side was as guilty as the other in failing to observe the proprieties of the courtroom; and the taking of exceptions to the court allowing either counsel to have their respective exceptions put in the record merely had the effect of placing too much emphasis upon the alleged mis-

conduct complained of, and the court feel that both counsel went further than necessary under the circumstances; but there was nothing of sufficient importance in this entire incident which would warrant the court to grant a new trial.

Another ground urged upon the court in the motion for a new trial is the fact that during the progress of the case one of the jurors complained about a pain in his limb, but which the juror himself admitted was not of sufficient consequence to keep him from giving the case his undivided and careful attention—this in response to the court's inquiry, and the court can find no factor in this point of sufficient force which might be prejudicial to the defendant.

Under Section 11576, General Code, a verdict shall be vacated and a new trial granted if excessive damages appear to have been given under influence of passion or prejudice.

The amount awarded by the jury, to-wit, $15,000, is an unusually large one considering the nature of the injury. It is the purpose of the law not to punish the defendant companies for an injury not wilfully inflicted, but to compensate the plaintiff as far as money will do so. There is no total disability here; in fact, the injury is of such a nature as to merely place a limitation upon plaintiff's bodily activities—his field of personal endeavor as far as office work, clerking, stenography, or even professional work, is concerned has not be circumscribed, and verdicts for similar injuries and of much smaller amount than recovered here have been subsequently reduced by the court on the ground that the law will only demand reasonable compensation for the injury done to plaintiff.

The court recognizes that no amount of money will compensate this boy for the loss of his leg, yet it will not do to have the jury give way to fancy instead of logic when assessing compensation, even though, as in this case, there was not a scintilla of evidence showing contributory negligence on the part of the unfortunate plaintiff. On the contrary, the testimony showed conclusively that the boy was discharging his duty in every respect as a faithful employee of the defendant express company. Unfortunately, however, the injured limb has not healed prop-

erly and it is very likely that the plaintiff will have to undergo a second operation so as to prepare the stump for an artificial leg and permit plaintiff to do away with the use of crutches. The court upon special request of *defendant's* counsel charged fully upon this phase of the case and the jury no doubt, in reaching its verdict, felt that substantial compensation should be given plaintiff for pain and suffering incident to such second operation and included in its consideration the element of risk connected with such additional amputation. In considering this phase of the case the court feels that in urging upon the jury the consideration of this question of a second operation the jury were unduly impressed with the risk involved and that in this respect a too heavy burden was placed upon the defendant companies, though the charge was properly given.

Taking the case as a whole, the issues were fairly presented to the jury, the case was ably conducted by both of the defendant companies, as well as by the plaintiff, the jury was one of unusual intelligence and caliber, and the court is of the opinion that the motion for a new trial should be denied, providing the plaintiff agrees to a remittitur of $5,000, leaving a verdict of $10,000 upon which judgment will be entered; otherwise a new trial will be granted.